# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td></td><td>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DOORDASH, INC., a Delaware corporation; and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DONNA ONTIVEROS, on behalf of herself and others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court

400 McAllister Street
San Francisco, CA 94102-4515

**CASE NUMBER:**
*(Número del Caso):*

**CGC-18-567688**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Justin Kachadoorian, CounselOne, PC, 9301 Wilshire Blvd., Ste. 650, Beverly Hills, CA 90210, 310-277-9945

DATE: **JUN 2 7 2018**    **CLERK OF THE COURT**    Clerk, by    **DE LA VEGA-NAVARRO, Rosali**    Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

BY FAX
ONE LEGAL LLC

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)

[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Justin Kachadoorian (Cal. Bar No. 260356)<br>CounselOne, P.C.<br>9301 Wilshire Boulevard, Suite 650<br>Beverly Hills, California 90210<br>TELEPHONE NO.: (310) 277-9945    FAX NO.: (424) 277-3727<br>ATTORNEY FOR (Name): Plaintiff Donna Ontiveros | FOR COURT USE ONLY<br><br>*ENDORSED FILED*<br>*San Francisco County Superior Court*<br>*JUN 27 2018*<br>*CLERK OF THE COURT*<br>*BY: ROSSALY DE LA VEGA*<br>*Deputy Clerk* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME:

CASE NAME:
ONTIVEROS v. DOORDASH, INC., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: *CGC-18-567688* |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [✓] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

**2.** This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
- a. [ ] Large number of separately represented parties
- b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
- c. [✓] Substantial amount of documentary evidence
- d. [✓] Large number of witnesses
- e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
- f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive

**4.** Number of causes of action (specify): nine

**5.** This case [✓] is [ ] is not a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 27, 2018

Justin Kachadoorian
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

*BY FAX*
*ONE LEGAL LLC*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

1  ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
anthony@counselonegroup.com
2  ALEXANDRIA R. KACHADOORIAN, Cal. Bar No. 240601
alexandria@counselonegroup.com
3  JUSTIN KACHADOORIAN, Cal. Bar No. 260356
justin@counselonegroup.com
4  COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
5  Beverly Hills, California 90210
Telephone: (310) 277-9945
6  Facsimile:  (424) 277-3727

7  Attorneys for Plaintiff DONNA ONTIVEROS,
on behalf of herself and others similarly situated

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10

11             FOR THE COUNTY OF SAN FRANCISCO

*ENDORSED FILED San Francisco County Superior Court JUN 27 2018 CLERK OF THE COURT BY: ROSSALY DE LA VEGA Deputy Clerk*

*BY FAX ONE LEGAL LLC*

**CGC-18-567688**

| | |
|---|---|
| 13   DONNA ONTIVEROS, on behalf of herself and others similarly situated, | Case No. |
| 14             Plaintiff, | **CLASS ACTION COMPLAINT FOR:** |
| 15           v. | (1)  Violation of 15 U.S.C. § 1681b(b)(2)(A) (Fair Credit Reporting Act); |
| 16   DOORDASH, INC., a Delaware corporation; and DOES 1 through 50, inclusive, | (2)  Violation of 15 U.S.C. §1681b(b)(3)(A) (Fair Credit Reporting Act); |
| 17 | (3)  Violation of 15 U.S.C. §1681b(f) (Fair Credit Reporting Act); |

13  DONNA ONTIVEROS, on behalf of herself
and others similarly situated,

        Case No.

14

        Plaintiff,

    **CLASS ACTION COMPLAINT FOR:**

15        v.

(1)  Violation of 15 U.S.C. §
     1681b(b)(2)(A) (Fair Credit Reporting Act);

16  DOORDASH, INC., a Delaware corporation;
and DOES 1 through 50, inclusive,

(2)  Violation of 15 U.S.C. §1681b(b)(3)(A)
     (Fair Credit Reporting Act);

17

(3)  Violation of 15 U.S.C. §1681b(f) (Fair
     Credit Reporting Act);

18        Defendants.

(4)  Violation of California Civil Code
     §1786.16 (California Investigative
     Consumer Reporting Agencies Act);

19

20

(5)  Violation of California Civil Code
     §1786.40(a) (California Investigative
     Consumer Reporting Agencies Act);

21

(6)  Violation of 15 U.S.C. section
     1681b(a) (Fair Credit Reporting Act);

22

(7)  Violation of California Civil Code
     § 1786.12 (California Investigative
     Consumer Reporting Agencies Act);

23

24

(8)  Violation of 15 U.S.C. §§
     1681b(f), 1681e(a), 1681q (Fair Credit
     Reporting Act);

25

(9)  Violation of California Bus. &
     Prof. Code §§ 17200, *et seq.*

26

27

**DEMAND FOR JURY TRIAL**

28

---

CLASS ACTION COMPLAINT

Plaintiff Donna Ontiveros (hereinafter, "Plaintiff"), on behalf of herself and all others similarly situated, complains of Defendants Doordash, Inc. ("Doordash"), a Delaware corporation, and Does 1 through 50, inclusive, (hereinafter, "Defendants"), as follows:

## NATURE OF ACTION

1. This class action arises from Defendants' acquisition and use of consumer reports or investigative consumer reports (referred to collectively as "consumer reports" for the sake of brevity) to conduct background checks on Plaintiff and prospective employees.

2. Defendants routinely obtain and use information from consumer reports in connection with their hiring processes without complying with state and federal mandates for doing so.

3. Plaintiff, individually and on behalf of all other members of the public similarly situated, seeks compensatory and punitive damages arising from Defendants' systematic and willful violation of, *inter alia*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*

4. Defendants violated the requirements under this statute in at least two separate ways: (1) failure to provide proper pre-authorization disclosures and (2) failure to provide proper adverse-action disclosures.

5. First, the procurement of background reports for employment purposes is subject to strict disclosure requirements under federal law pursuant to the FCRA. Among other things, an employer may not procure a background report concerning a job applicant or employee unless a "clear and conspicuous" disclosure is made in a stand-alone document that consists solely of the disclosure informing the applicant or employee that a report may be obtained for employment purposes.

6. Defendants failed to provide the requisite pre-authorization disclosure to applicants and employees before procuring background reports.

7. Second, the FCRA requires users of consumer reports to follow certain procedures and provide certain disclosures prior to and after taking adverse actions against current and former employees based in whole or in part on their consumer report information. Among other things, prior to taking an adverse action, an employer must provide a "pre-adverse action" notice, which includes a copy of the consumer report and a current version of the FCRA Summary of Rights issued

1

CLASS ACTION COMPLAINT

1    by the Consumer Financial Protection Bureau (CFPB).

2        8. Defendants failed to provide a copy of the consumer report and a current version of
3    the FCRA Summary of Rights prior to taking an adverse action against Plaintiff, namely, declining
4    to hire her.

5        9. As further alleged herein, Defendants' violations occurred because Defendants have
6    willfully failed to follow the statutory mandates before seeking, acquiring, and using background
7    reports to make employment decisions; violated the express and unambiguous provisions of the
8    relevant statutes; or failed to implement reasonable procedures to assure compliance with statutory
9    mandates.

10        10. As a result of Defendants' wrongful acts and omissions, Plaintiff and other putative
11    class members have been injured, including, without limitation, having their privacy and statutory
12    rights invaded in violation of the FCRA.

13        11. On behalf of herself and putative class members, Plaintiff seeks statutory, actual, or
14    compensatory damages, punitive damages, costs and expenses of litigation including attorneys' fees,
15    and equitable relief, including injunctive relief requiring Defendants to comply with their legal
16    obligations, as well as additional and further relief that may be appropriate.  Plaintiff reserves the
17    right to amend this Complaint to add additional relief as permitted under applicable law.

18                                **PARTIES**

19        12. At all times mentioned herein, Defendant Doordash was and is a Delaware
20    corporation with its principal place of business in San Francisco, California and was, at all times
21    relevant to this complaint, engaged in commercial transactions throughout this county, the State of
22    California, and the various states of the United States of America.

23        13. At all times mentioned herein Plaintiff was and is a resident of the State of California.

24        14. Venue as to Defendants is proper in this judicial district pursuant to Code of Civil
25    Procedure § 395.5 because the principal place of business of Defendant Doordash is situated in
26    San Francisco County, State of California.

27    ///

28    ///

                                        2
                              CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTUAL BACKGROUND**

**Pre-Authorization**

15. Doordash is a food delivery company. Customers place food orders at local restaurants using Doordash's smartphone application. Doordash employs delivery persons that it calls "Dashers" to pick up the food orders from restaurants and deliver them to customers.

16. Before Doordash hires a someone to be a Dasher, it obtains a criminal background report using a third-party vendor, i.e., a consumer report. Indeed Doordash requires applicants to submit to a criminal background check as one of the first steps in its application process and before the applicant receives a conditional offer of employment.

17. Plaintiff applied for a job as a Dasher in or around November 2017. In connection with her employment application, Doordash procured a consumer report on her. Then, based on that report, Doordash rejected her application.

18. Under the FCRA, it is unlawful to procure or caused to be procured a consumer report[1] for employment purposes unless a disclosure is made to the applicant or employee in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes and the applicant or employee authorizes, in writing, the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii). A similar requirement obtains under the ICRAA. *See* Cal. Civ. Code § 1786.16(a)(2)(B) ("The person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure[.]").

19. The FTC has warned that the form should not include any extraneous information or be part of another document. For example, in response to an inquiry as to whether the disclosure may be set forth within an application for employment or whether it must be included in a separate document, the FTC stated:

*///*

---

[1] Section 1681a(d)(1) of the FCRA defines "consumer report" as any oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes.

3

CLASS ACTION COMPLAINT

> The disclosure may not be part of an employment application because the language [of 15 U.S.C. § 1681b(b)(2)(A) is] intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side within the disclosure.[2]

20. The plain language of the statute also clearly indicates that the inclusion of extraneous information in a disclosure form violates the disclosure and authorization requirements of the FCRA because such a form would not consist "solely" of the disclosure. In fact, the FTC expressly warned that the FCRA notice may not include extraneous information. In a report dated July 2011, the FTC emphasized that "the notice [under 15 U.S.C. § 1681b(b)(2)(A)] may not include extraneous or contradictory information[.]"

21. Many courts have also determined that the inclusion of extraneous information violates § 1681b(b)(2)(A) of the FCRA. *See, e.g., Speer v. Whole Food Market Group., Inc.*, No. 8:14-CV-3035-T-26TBM, 2015 WL 1456981, *3 (M.D. Fla. Mar. 30, 2015); *Lengel v. HomeAdvisor, Inc.*, 2015 U.S. Dist. LEXIS 59017, *19-24 (D. Kan. May 5, 2015); *Milbourne v. JRK Residential Amer., LLC*, 2015 U.S. Dist. LEXIS 29905, *14-19 (E.D. Va. Mar. 11, 2015); *Avila v. NOW Health Group, Inc.*, 2014 U.S. Dist. LEXIS 99178, *6-8 (N.D. Ill. July 17, 2014); *Reardon v. Closetmaid Corp.*, 2013 U.S. Dist. LEXIS 169821, *14-27 (W.D. Pa. Dec. 2, 2013); *Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626, *27-34 (D. Md. Jan. 25, 2012); and *EEOC v. Video Only, Inc.*, 2008 U.S. Dist. LEXIS 46094 (D. Or. June 11, 2008).

22. Defendants violated the FCRA by failing to provide Plaintiff and other members of the putative class with the requisite disclosure that a consumer report may be procured for employment purposes in a document that consists solely of the disclosure.

23. Doordash does not provide applicants with a standalone disclosure compliant with the FCRA. The disclosure is included as part of a multipurpose page titled "Background Check" that requires applicants to provide various forms of personal identification information (and misinforms them that "[w]e're required to run a background check for safety reasons" and also states

---

[2] Letter from Clarke W. Brinckerhoff, Fed. Trade Comm'n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998), available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98 (last accessed March 16, 2016).

4

CLASS ACTION COMPLAINT

1    that "[t]his won't affect your credit score" and "[y]our information will be kept private and secure")

2    and to wade through various attachments at the bottom of the page. The very first attachment is not

3    the disclosure but the entirety of the FCRA Summary of Rights, which is a lengthy document

4    generally laying out someone's rights under the statute, and another attachment requiring the

5    applicant to permit a litany of third parties (e.g., "past and present employers; learning institutions,

6    including colleges and universities, law enforcement and all other federal, state and local agencies,"

7    etc. etc.) to disclose information to the CRA, the provision of some of this information (e.g., earnings

8    history) being of suspect legality. (Such a consent is unnecessary anyway because applicants do not

9    consent, consistent with section 1681d, to Doordash's procurement of an *investigative* consumer

10   report under the FCRA.[3]) Several dense pages of state and local consumer-reporting notices are

11   also included on this page. The purported disclosure itself does not even inform the applicant that

12   "a consumer report may be obtained *for employment purposes*," as required under 1681

13   b(b)(2)(A)(i) but rather, using one of Doordash's many euphemisms to sidestep calling employment

14   by its proper name, confusingly states that a consumer report may be ordered "in connection with

15   your engagement request." The most prominent feature on the Background Check page is the red

16   "Continue" button at the bottom that applicants must click to proceed to the next screen—the

17   obvious intent of which is to direct applicants' attention away from the content appearing on the

18   page and facilitate the swift completion of the application. Applicants need not click on the attached

19   documents to proceed to the next screen. The entire presentation of the disclosure, buried in the

20   Background Check page, which itself is part of a multipage application, is to suppress and obscure

21   the only necessary information that the FCRA requires and allows to be set forth so that consumers

22   know what they are consenting to. *See Robinzine v. Big Lots Stores, Inc.*, 156 F. Supp. 3d 920, 927

23   (N.D. Ill. 2016) (collecting cases involving various forms of extraneous information invalidating

24   the purported disclosure).

25   ///

26   [3] Under the FCRA an "investigative consumer report" means a consumer report or portion thereof in which
27   information on a consumer's character, general reputation, personal characteristics, or mode of living is
     obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or
28   with others with whom he is acquainted or who may have knowledge concerning any such items of
     information.

24. Because the disclosure is not a standalone document clearly informing applicants that Doordash may procure a consumer report for employment purposes, applicants could not and did not give their written authorization for Doordash to procure consumer reports, as required under section 1681b(b)(2)(A)(ii). *See Syed v. M-I, LLC*, 853 F.3d 492, 504-505 (9th Cir. 2017).

### Adverse Action

25. Upon information and belief, Defendants procured or caused to be procured a background report on Plaintiff from a consumer reporting agency or investigative consumer reporting agency (referred to herein as "CRA"), namely, Checkr, and Defendants declined to hire Plaintiff because of information contained in this background report.

26. Despite Defendants' intent to take an adverse action, Defendants did not provide Plaintiff with (1) a copy of the report before taking adverse action or (2) the FCRA Summary of Rights promulgated by the Consumer Financial Protection Bureau (CFPB), as required by section 1681b(b)(3)(A) of the FCRA.

### Lack of Permissible Purpose to Procure Background Reports

27. To the extent that Doordash contends that it did not procure consumer reports on applicants for employment purposes, it lacked a permissible purpose under the FCRA or ICRAA. *See* 15 U.S.C. § 1681b; Cal. Civ. Code § 1786.12.

28. To the extent that Doordash contends that it did not procure consumer reports on applicants for employment purposes, it obtained consumer reports under false pretenses, in violation of the FCRA, 15 U.S.C. § 1681q.

29. To the extent that Doordash contends that it did not procure consumer reports on applicants for employment purposes, it failed to accurately certify to the consumer reporting agency the purpose for which the consumer report was authorized to be furnished under section 1681b(a), in violation of 15 U.S.C. §§ 1681b(f), 1681e(a), and Cal. Civ. Code § 1786.16(a)(4).

30. To the extent that Doordash contends that it did not procure consumer reports on applicants for employment purposes, any purported disclosure that Doordash provided to applicants, along with any purported authorization obtained from them, was invalid because applicants were misinformed about the reason Doordash was obtaining their consumer report and therefore did not

CLASS ACTION COMPLAINT

1  provide their consent to Doordash under 15 U.S.C. § 1681b(a)(2); Cal. Civ. Code § 1786.12(c).

2      31. Checkr is a CRA under the FCRA because it receives monetary fees from its

3  customers in exchange for assembling information on consumers for the purpose of furnishing

4  consumer reports to third parties, and provides such reports using the facilities of interstate

5  commerce, including the mail and the internet, for the purpose of preparing and furnishing such

6  reports.

7      32. As a CRA, Checkr is prohibited from furnishing consumer reports without the

8  procurer of the report having a permissible purpose and having truthfully certified such purpose.

9  *See* 15 U.S.C. § 1681b(a)(prohibiting the furnishing of consumer reports to a user without a

10  permissible purpose) and 15 U.S.C. § 1681e(a)(prohibiting the furnishing of consumer reports

11  without the procurer having certified its permissible purpose).

12      33. Where the permissible purpose is "employment purposes," the user must certify to

13  the consumer reporting agency that it has received written authorization from the subject of the

14  consumer report and has provided a stand-alone disclosure to the subject of the report indicating

15  that a report may be procured, and that it will provide pre-adverse action notice in the event that it

16  intends to take adverse action based in whole or in part on the report.

17      34. To the extent Doordash used the reports for a purpose other than the purpose that it

18  certified to Checkr, Doordash violated 15 U.S.C. § 1681b(f), which requires that users of consumer

19  reports certify their permissible purpose for obtaining the reports.

20                      **Defendants Willfully Violated the FCRA.**

21      35. Defendants' misconduct, as alleged herein, was willful or reckless in that Defendants

22  knew or reasonably should have known that their conduct violated the law because of the following

23  facts, among others:

24      •  The FCRA was enacted in 1970; by the time Defendants came into existence, it had

25         already been a well-established law of which they should have been aware;

26      •  Defendants conduct is inconsistent with the plain language of the statute, longstanding

27         FTC guidance, and judicial interpretation predating Defendants' conduct, as discussed

28         above;

---

7

CLASS ACTION COMPLAINT

- Upon information and belief, Defendants had communications or consultations with one or more CRAs knowledgeable about state and federal consumer-reporting requirements;

- Defendants' Background Check page includes references to the FCRA, including attaching the FCRA Summary of Rights;

- Upon information and belief, Defendants were required to provide certifications to CRAs under the FCRA stating that Defendants would comply with the disclosure, authorization, and adverse-action requirements;[4] and

- Upon information and belief, Defendants have dedicated in-house and outside counsel with knowledge of FCRA/ICRAA requirements.

36. Moreover, Doordash obtained at least some of its consumer reports from Checkr, a company whose primary business is the sale of consumer reports. The Checkr website is replete with information relating to consumer-reporting requirements, and its customer agreement, which upon information and belief Doordash agreed to, discusses both federal and state consumer-reporting requirements.

37. Consequently, Doordash was aware or should have been aware of its legal obligations. Despite Defendants' knowledge of their legal requirements under the FCRA, Defendants systematically failed to comply with these requirements.

## CLASS ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to California Code of Civil Procedure § 382 behalf of the following classes and subclasses:

> **FCRA Pre-Authorization Class**: All persons residing in the United States (including all territories and other political subdivisions of the United States) who applied for employment with or were employed by Defendants within the longest applicable limitations period and on whom Defendants procured one or more consumer reports or investigative consumer reports.

///

///

---

[4] *See* 15 U.S.C. § 1681b(b)(1).

8

CLASS ACTION COMPLAINT

**California Pre-Authorization Subclass:** All persons residing in California who applied for employment with or were employed by Defendants within the longest applicable limitations period and on whom Defendants procured one or more investigative consumer reports.

**FCRA Adverse Action Class:** All persons residing in the United States (including all territories and other political subdivisions of the United States) who applied for employment with or were employed by Defendants within the longest applicable limitations period against whom Defendants took adverse employment action based in whole or in part on information contained in a consumer report or investigative consumer report.

**California Adverse Action Subclass:** All persons residing in California who applied for employment with or were employed by Defendants within the longest applicable limitations period against whom Defendants took adverse employment action based in whole or in part on information contained in an investigative consumer report.

39. Members of the classes, as described above, will be referred to as "class members." Excluded from the classes and subclasses are: (1) Defendants, any entity or division in which either Defendants has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff and members of their immediate family. Plaintiff reserves the right to amend the above classes and subclasses and to add additional subclasses as appropriate based on investigation, discovery, and the specific theories of liability. Plaintiff reserves the right to amend or modify the class description with greater particularity or further division into subclasses or limitation to particular issues.

40. This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure 382 because there is a well-defined community of interest in the litigation and the classes and subclasses are easily ascertainable.

**A.    Numerosity**

41. Although the precise number of class members has not been determined, Plaintiff estimates that the classes and subclasses consist of more than one hundred members and that the identity of such persons is readily ascertainable by inspection of Defendants' employment and/or hiring records. Therefore it is reasonable that the class members are so numerous that joinder is

9

CLASS ACTION COMPLAINT

1    impracticable, and the disposition of their claims in a class action will provide substantial benefits

2    to the parties and the Court.

3    **B.    Common Questions Predominate**

4        42. There are questions of law and fact common to the classes and subclasses that

5    predominate over any questions affecting only individual putative class members.  Thus proof of a

6    common set of facts will establish the right of each class member to recovery.   These common

7    questions of law and fact include but are not limited to:

8        a.    Whether Defendants violated the FCRA by failing to provide class members with

9             a "clear and conspicuous" disclosure in a document that consists solely of the

10            disclosure that a consumer report may be obtained for employment purposes;

11       b.    Whether Defendants violated the FCRA by failing to clearly and accurately

12            disclose to class members in writing and not later than three days after the date on

13            which the report was first requested that an investigative consumer report may be

14            made;

15       c.    Whether Defendants violated the FCRA by failing to provide class members with

16            the FCRA Summary of Rights promulgated by the CFPB;

17       d.    Whether Defendants violated section 1681b(b)(3)(A) of the FCRA by failing to

18            provide applicants and employees with copies of their consumer reports or

19            investigative consumer reports before taking adverse action, as required by section

20            1681b(b)(3)(A) of the FCRA;

21       e.    Whether Defendants violated section 1681b(f) of the FCRA by violating state equal

22            employment opportunity laws;

23       f.    Whether Defendants violated the ICRAA by failing to advise Plaintiff and putative

24            class members that they intended to take adverse action against them and by failing

25            to supply the name and address of the investigative consumer reporting agency

26            making the report about them, as required under Cal. Civ. Code § 1786.40(a); and

27

28

CLASS ACTION COMPLAINT

g.    Whether Defendants' conduct described herein constitutes a violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, entitling Plaintiff and members of the putative class to equitable relief.

**C.    Typicality**

43. Plaintiff's claims are typical of the claims of the putative class members because Defendants failed to provide Plaintiff with the requisite disclosures and engaged in adverse action against her without complying with the disclosure requirements under the FCRA. Plaintiff and each class member sustained similar injuries arising out of Defendants' conduct in violation of law. The injuries of each class member were caused directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants' misconduct is common to all putative class members and represents a common thread of misconduct resulting in injury to all class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

**D.    Adequacy**

44. Plaintiff will fairly and adequately represent and protect the interests of the classes and subclasses. Counsel who represent Plaintiff and putative class members are experienced and competent in litigating class actions.

**E.    Superiority of Class Action**

45. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members. Each putative class member has been damaged and is entitled to recovery as a result of the violations alleged herein. Moreover, because the damages suffered by individual members of the classes and subclasses may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the classes and subclasses to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and

11

1  economical for the parties and the judicial system.  Plaintiff is unaware of any difficulties in

2  managing this case that should preclude class action.

3  **FIRST CAUSE OF ACTION**

4  **VIOLATION OF THE FAIR CREDIT REPORTING ACT**

5  **15 U.S.C. § 1681b(b)(2)(A)**

6  **(Brought on behalf of the FCRA Pre-Authorization Class)**

7  46. Plaintiff hereby incorporates by reference the allegations contained in this

8  Complaint.

9  47. Defendants are "persons" as defined by Section 1681a(b) of the FCRA.

10  48. Plaintiff and class members are "consumers" within the meaning of Section 1681a(c)

11  of the FCRA because they are "individuals."

12  49. Section 1681b(b)(2)(A) of the FCRA provides, in relevant part:

13  (b) Conditions for furnishing and using consumer reports for employment purposes.
   ...
14  (2) Disclosure to consumer
       (A) In general
15  Except as provided in subparagraph (B), a person may not procure a
   consumer report, or cause a consumer report to be procured, for
16  employment purposes with respect to any consumer, unless—
17            (i) a ***clear and conspicuous*** disclosure has been made in writing to
           the consumer at any time before the report is procured or caused to
18           be procured, in a document that consists solely of the disclosure, that
           a consumer report may be obtained for employment purposes; and
19           (ii) the consumer has authorized in writing (which authorization
           may be made on the document referred to in clause (i)) the
20           procurement of the report by that person.  (Emphasis added.)

21

22  50. As alleged above, Defendants violated Section 1681b(b)(2)(A) of the FCRA by

23  failing to provide Plaintiff and class members with a clear and conspicuous written disclosure before

24  a consumer report was procured or caused to be procured that a consumer report may be obtained

25  for employment purposes in a document that consists solely of the disclosure.

26  51. Based upon the facts likely to have evidentiary support after a reasonable opportunity

27  for further investigation and discovery, Defendants have policies and practices of failing to provide

28  adequate written disclosures to applicants and employees before procuring consumer reports or

12

1  causing consumer reports to be procured and failing to obtain the authorization of applicants and

2  employees in writing before procuring consumer reports or causing them to be procured.  Pursuant

3  to these policies and practices, Defendants procured consumer reports or caused consumer reports

4  to be procured for Plaintiff and class members without first providing a written disclosure in

5  compliance with Section 1681b(b)(2)(A)(i) of the FCRA or obtaining an authorization in writing

6  from the consumer in compliance with Section 1681b(b)(2)(A)(ii).

7        52. As alleged above, Defendants' conduct in violation of Section 1681b(b)(2)(A)(i) &

8  (ii) of the FCRA was and is willful in that Defendants acted in deliberate or reckless disregard of

9  their obligations and the rights of applicants and employees, including Plaintiff and class members.

10        53. As a result of Defendants' illegal procurement of consumer reports as described

11  above, Plaintiff and class members have been injured, including, but not limited to, having their

12  privacy and statutory rights invaded in violation of the FCRA.  Owing to the inadequacy of

13  Defendants' disclosure and authorization, Plaintiff and class members did not know that a consumer

14  report was being obtained and/or did not understand or appreciate what that meant.

15        54. Plaintiff, on behalf of herself and all class members, seeks all available remedies

16  pursuant to 15 U.S.C. § 1681n, including statutory damages, actual damages, and punitive damages,

17  and attorneys' fees and costs.

18        55. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff

19  alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C.

20  Section 1681o.

21  **SECOND CAUSE OF ACTION**

22  **VIOLATION OF THE FAIR CREDIT REPORTING ACT**

23  **15 U.S.C. § 1681b(b)(3)(A)**

24  **(Brought on behalf of the FCRA Adverse Action Class)**

25        56. Plaintiff hereby incorporates by reference the allegations contained in this

26  Complaint.

27        57. Section 1681a(k)(1)(B)(ii) of the FCRA defines "adverse action" as "a denial of

28  employment or any other decision for employment purposes that adversely affects any current or

13

prospective employee."

58. Section 1681b(b)(3)(A) of the FCRA requires that anyone attempting to take any adverse action based in whole or in part on a consumer report must first "provide to the consumer to whom the report relates a copy of the report; and a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Bureau of Financial Protection] under section 1681g(c)(3) of this title," i.e., the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection.

59. Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Defendants have a policy and practice of taking adverse actions against applicants and employees based in whole or in part on a consumer report, without first providing them with a copy of the consumer report or a current version of the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection.

60. At all relevant times herein, Defendants, pursuant to the policy and practice described above, took adverse action against Plaintiff and class members based in whole or in part on a consumer report, without first providing (1) a copy of the consumer report(s) used and (2) a written description of the rights of the consumer, i.e., the FCRA Summary of Rights promulgated by the CFPB.

61. As alleged above, Defendants' conduct in violation of Section 1681b(b)(3)(A) of the FCRA was and is willful in that Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiff and class members.

62. As a result of Defendants' inadequate disclosures prior to taking adverse action against Plaintiff and class members, Plaintiff and class members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA. Plaintiff also suffered anxiety, stress, and confusion as a result of Defendants' inadequate disclosures. Additionally, Plaintiff and class members have been injured in that Defendants' conduct caused a material diminishment in their employment prospects without being fully informed of their statutory rights or having an opportunity to invoke those rights and reverse any adverse employment action taken by Defendants.

CLASS ACTION COMPLAINT

63. Plaintiff, on behalf of herself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory, actual, and punitive damages, and attorneys' fees and costs.

64. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

### THIRD CAUSE OF ACTION

**VIOLATION OF FAIR CREDIT REPORTING ACT**

**15 U.S.C. § 1681b(f)**

**(Brought on behalf of the California Pre-Authorization and Adverse Action Subclasses)**

65. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

66. Defendants violated Section 1681b(f) of the FCRA because they used Plaintiff's consumer report for an improper purpose, one that contravened the California Fair Employment and Housing Act (FEHA), California Government Code § 12940.

67. Section 1681b(f) of the FCRA provides, in relevant part:
"(f) Certain use or obtaining of information prohibited. A person shall not use or obtain a consumer report for any purpose unless
…
"(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
"(2) the purpose is certified in accordance with section 607 [§ 1681e] by a prospective user of the report through a general or specific certification."

68. Section 1681b(b)(1)(A)(ii) provides in pertinent part: "Conditions for Furnishing and Using Consumer Reports for Employment Purposes. (1) Certification from user. A consumer reporting agency may furnish a consumer report for employment purposes only if (A) the person who obtains such report from the agency certifies to the agency . . . (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation . . . ."

///

15

1    69. Defendants used information in the consumer reports procured on applicants and

2    employees in violation of California equal employment opportunity laws and regulations, namely,

3    Cal. Gov. Code § 12952, which prohibits an employer from inquiring into or considering the

4    conviction history of the applicant until after the employer has made a conditional offer of

5    employment to the applicant.  In violation of this section, Defendants considered the conviction

6    history of Plaintiff and applicants before making a conditional offer of employment.

7    70. Section 12952 also requires an employer that intends to deny an applicant a position

8    of employment solely or in part because of the applicant's conviction history to make an

9    individualized assessment of whether the applicant's conviction history has a direct and adverse

10    relationship with the specific duties of the job that justify denying the applicant the position,

11    considering such factors as the nature and gravity of the offense or conduct, the time that has passed

12    since the offense or conduct and completion of the sentence, and the nature of the job held or sought.

13    If the employer intends to disqualify the applicant based on his or her conviction history, the

14    employer must notify the applicant of this preliminary decision in writing and specifically identify

15    the disqualifying conviction(s), include a copy of the history report, and provide an explanation of

16    the applicant's right to respond to the notice of preliminary decision before it becomes final within

17    five business days.  If the employer makes a final decision to deny the application solely or in part

18    because of the applicant's conviction history, the employer must notify the applicant in writing of

19    the disqualification, any existing procedure the employer has for the applicant to challenge the

20    decision or request reconsideration, and the applicant's right to file a complaint with the Department

21    of Fair Employment and Housing.

22    71. Defendants violated Section 12952 by failing to conduct individualized assessments

23    and give appropriate notifications as described in the preceding paragraph.

24    72. Defendants also violated Cal. Code Regs., tit. 2, § 11017.1 by failing to give

25    adversely impacted applicants individual notice of disqualifying convictions and a reasonable

26    opportunity to present evidence that the information was factually inaccurate.

27    73. Upon information and belief, Defendants have a policy of refusing to hire persons

28    with criminal records, and this policy disparately impacts persons of protected groups such as

16

CLASS ACTION COMPLAINT

1  Plaintiff, who is Hispanic.

2      74. Hispanics are arrested, charged, and convicted of crimes in numbers disproportionate

3  to their representation in the general population.[5]

4      75. Because of the disproportionate crime rates, Defendants' policy of rejecting job

5  applicants based on criminal history has a greater adverse impact on Hispanics than non-Hispanic

6  whites.

7      76. Defendants also violated Los Angeles Municipal Code § 189 *et seq.*, which prohibits

8  an employer doing business in the City of Los Angeles from inquiring about or requiring the

9  disclosure of an applicant's criminal history unless and until a conditional offer of employment has

10  been made to the applicant and also prohibits employers from taking adverse action against

11  applicants to whom a conditional offer of employment has been made based on an applicant's

12  criminal history unless the employer performs a written assessment that effectively links specific

13  aspects of the applicant's criminal history with the risk inherent in the duties of the employment

14  position sought by the applicant and provides the affected applicant with the assessment and a

15  written notification of the proposed adverse action.  An employer must not take any adverse action

16  for at least five business days after the applicant receives such notice to enable the applicant to

17  provide information or documentation to the employer that the applicant wishes the employer to

18  consider in assessing the applicant's fitness for the position. The employer must consider the

19  applicant's information or documentation when performing its final assessment and, if the employer

20  still decides to take adverse action, provide the applicant with a copy of the written assessment.

21  ///

22  ---

[5] *See* "Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964," EEOC Enforcement Guidance, No. 915.002, Apr. 25, 2012, available at https://www.eeoc.gov/laws/guidance/arrest_conviction.cfm ("Arrest and incarceration rates are particularly high for African American and Hispanic men. African Americans and Hispanics are arrested at a rate that is 2 to 3 times their proportion of the general population.  Assuming that current incarceration rates remain unchanged, about 1 in 17 White men are expected to serve time in prison during their lifetime; by contrast, this rate climbs to 1 in 6 for Hispanic men; and to 1 in 3 for African American men.") (last accessed Jun. 11, 2018).  For example, in 2015, 39.9 percent of felony and misdemeanor arrests in California were of Hispanics, even though Hispanics comprised approximately only 17.8 percent of the US population.  *See* California Department of Justice, "Crime in California," 2015, at p. 33, Table 30, https://oag.ca.gov/sites/all/files/agweb/pdfs/cjsc/publications/candd/cd15/cd15.pdf (last accessed Jun. 11, 2018); U.S. Census Bureau, Quick Facts: California, available at https://www.census.gov/quickfacts/fact/table/US/RHI725216 (last accessed Jun. 11, 2018).

17

CLASS ACTION COMPLAINT

77. Defendants did not comply with requirement of the Los Angeles Fair Chance Initiative for Hiring described in the preceding paragraph with regard to Plaintiff or, upon information and belief, other applicants.

78. Because Defendants' use of consumer reports was in violation of state equal employment opportunity laws and regulations, Defendants violated the FCRA.

79. As a direct and proximate cause of Defendants' violation of Section 1681b(f) of the FCRA, Plaintiff and putative class members suffered injury, including lost job opportunities.

80. Defendants' conduct in violation of Section 1681b(f) of the FCRA was and is willful or reckless in that Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiff and class members, as alleged above.

81. Plaintiff, on behalf of herself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory, actual, and punitive damages, and attorneys' fees and costs.

82. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING**

**AGENCIES ACT,**

**CAL. CIV. CODE § 1786.16**

**(Brought on Behalf of the California Pre-Authorization Subclass)**

83. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

84. Defendants are "persons" as defined by Cal. Civ. Code § 1786.2(a).

85. Section 1786.2(c) of the ICRAA defines "investigative consumer report" as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means."

///

18

CLASS ACTION COMPLAINT

86. Section 1786.2(d) of the ICRAA defines "investigative consumer reporting agency" as "any person who, for monetary fees or dues, engages in whole or in part in the practice of collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning consumers for the purposes of furnishing investigative consumer reports to third parties, but does not include any governmental agency whose records are maintained primarily for traffic safety, law enforcement, or licensing purposes, or any licensed insurance agent, insurance broker, or solicitor, insurer, or life insurance agent."

87. Section 1786.16(a)(2)(B)(iv)-(vi) of the ICRAA provides in relevant part as follows:

> (2) If, at any time, an investigative consumer report is sought for employment purposes other than suspicion of wrongdoing or misconduct by the subject of the investigation, the person seeking the investigative consumer report may procure the report, or cause the report to be made, only if all of the following apply:
>
> …
>
> > (B) The person procuring or causing the report to be made provides a ***clear and conspicuous disclosure*** in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure, that:
> >
> > …
> >
> > > (iv) Identifies the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation.
> > >
> > > (v) Notifies the consumer in writing of the nature and scope of the investigation requested, including a summary of the provisions of Section 1786.22.
> > >
> > > (vi) Notifies the consumer of the Internet Web site address of the investigative consumer reporting agency identified in clause (iv), or, if the agency has no Internet Web site address, the telephone number of the agency, where the consumer may find information about the investigative reporting agency's privacy practices, including whether the consumer's personal information will be sent outside the United States or its territories and information that complies with subdivision (d) of Section 1786.20. This clause shall become operative on January 1, 2012.  (Emphasis added.)

88. Defendants violated Section 1786.16(a)(2)(B)(i)-(vi) of the ICRAA by failing to provide Plaintiff and putative class members with a disclosure that an investigative consumer report may be obtained; identifying the permissible purpose of the report; stating that the report may include information on the consumer's character, general reputation, personal characteristics, and

1  mode of living; disclosing the name, address, and telephone number of the investigative consumer

2  reporting agency conducting the investigation; describing the nature and scope of the investigation;

3  and providing the website address of the investigative consumer reporting agency or the telephone

4  number of the agency where the consumer may find information about the investigative reporting

5  agency's privacy practices. *See* Cal. Civ. Code § 1786.16(a)(2)(B)(iv)-(vi).

6      89. Furthermore, section 1786.16(b)(1) of the ICRAA provides, in relevant part:

7      (b) Any person described in subdivision (d) of Section 1786.12 who requests an
    investigative consumer report, in accordance with subdivision (a) regarding that
8      consumer, shall do the following:

9          (1) Provide the consumer a means by which the consumer may indicate on a written
        form, by means of a box to check, that the consumer wishes to receive a copy of any
10          report that is prepared. If the consumer wishes to receive a copy of the report, the
        recipient of the report shall send a copy of the report to the consumer within three
11          business days of the date that the report is provided to the recipient, who may contract
        with any other entity to send a copy to the consumer. The notice to request the report
12          may be contained on either the disclosure form, as required by subdivision (a), or a
        separate consent form. The copy of the report shall contain the name, address, and
13          telephone number of the person who issued the report and how to contact them.

14

15      90. Doordash violated Section 1786.16(b)(1) by failing to provide Plaintiff and other

16  consumers a means by which the consumer may indicate on a written form, by means of a box to

17  check, that the consumer wishes to receive a copy of any report that is prepared.

18      91. On information and belief, and based upon the facts likely to have evidentiary

19  support after a reasonable opportunity for further investigation and discovery, Doordash had and

20  has a policy and practice of procuring investigative consumer reports or causing investigative

21  consumer reports to be procured on applicants without providing the required disclosures under Cal.

22  Civ. Code § 1786.16(a)(2)(B) and by failing to provide Plaintiff and other consumers a means by

23  which the consumer may indicate on a written form, by means of a box to check, that the consumer

24  wishes to receive a copy of any report that is prepared, as required under Cal. Civ. Code

25  1786.16(b)(1).

26      92. Upon information and belief, Doordash also violated section 1786.16(a)(4) of the

27  ICRAA, which provides that any person procuring or causing the request to be made shall certify to

28  the investigative consumer reporting agency that the person has made the applicable disclosures

1  under section 1786.16 and that the person will comply with subdivision (b).

2      93. Doordash's conduct as described herein was willful, reckless, or grossly negligent,

3  as alleged above.

4      94. As a result of Defendants' willful, reckless, or grossly negligent failure to provide

5  the required form and/or report(s) as set forth above, Plaintiff and class members have been injured

6  by, among other things, having their privacy and statutory rights invaded in violation of the ICRAA.

7      95. Plaintiff, on behalf of herself and all class members, seeks all available remedies

8  pursuant to Cal. Civ. Code § 1786.50 including statutory damages, actual damages, punitive

9  damages, injunctive and equitable relief, and attorneys' fees and costs.

10                    **FIFTH CAUSE OF ACTION**

11  **VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING**

12                        **AGENCIES ACT,**

13                  **CAL. CIV. CODE § 1786.40(a)**

14      **(Brought on Behalf of the California Adverse Action Subclass)**

15      96. Plaintiff hereby incorporates by reference the allegations contained in this

16  Complaint.

17      97. Section 1786.40(a) of the ICRAA provides in relevant part as follows:

18      (a) Whenever insurance for personal, family, or household purposes, employment, or the
    hiring of a dwelling unit involving a consumer is denied, or the charge for that insurance

19      or the hiring of a dwelling unit is increased, under circumstances in which a report
    regarding the consumer was obtained from an investigative consumer reporting agency,

20      the user of the investigative consumer report shall so advise the consumer against whom
    the adverse action has been taken and supply the name and address of the investigative

21      consumer reporting agency making the report.

22

23      98. Defendants violated Section 1786.40(a) of the ICRAA by failing to advise Plaintiff

24  and putative class members that they intended to take adverse action against them and they failed to

25  supply the name and address of the investigative consumer reporting agency making the report about

26  them.

27      99. As a result of Defendants' willful, reckless, or grossly negligent failure to advise

28  Plaintiff of their intent to take adverse action and to supply the name and address of the investigative

                              21

                    CLASS ACTION COMPLAINT

1   consumer reporting agency, as set forth above, Plaintiff and class members have been injured by,

2   among other things, having their privacy and statutory rights invaded in violation of the ICRAA.

3       100. Plaintiff, on behalf of herself and all class members, seeks all available remedies

4   pursuant to Cal. Civ. Code § 1786.50 including statutory damages, actual damages, punitive

5   damages, injunctive and equitable relief, and attorneys' fees and costs.

6                          **SIXTH CAUSE OF ACTION**

7              **VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

8                          **15 U.S.C. § 1681b(a)**

9           **(Brought on Behalf of the Improper Authorization Class)**

10      101. Plaintiff hereby incorporates by reference the allegations contained in this

11  Complaint.  Plaintiff alleges this cause of action in the alternative to causes of action one through

12  three above.

13      102. Section 1681b lists the permissible purposes for obtaining a consumer report under

14  the FCRA.

15      103. As alleged above, to the extent that Doordash contends that it did not procure

16  consumer reports on applicants for employment purposes, then Doordash lacked a permissible

17  purpose under the FCRA.

18      104. As a direct and proximate cause of this conduct, Doordash violated the statutory

19  rights of Plaintiff and other members of the putative class.

20      105. Doordash's conduct as described herein was willful, reckless, or grossly negligent,

21  as alleged above.

22      106. Plaintiff, on behalf of herself and all class members, seeks all available remedies

23  pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive

24  damages, and attorneys' fees and costs.

25      107. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff

26  alleges that the violations were negligent and seeks the appropriate remedy under 15 U.S.C. § 1681o.

27  ///

28  ///

CLASS ACTION COMPLAINT

1

### SEVENTH CAUSE OF ACTION

2

**VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING**

3

**AGENCIES ACT, CAL. CIV. CODE § 1786.12**

4

**(Brought on Behalf of the Improper Authorization Class)**

5

108. Plaintiff hereby incorporates by reference the allegations contained in this

6 Complaint.  Plaintiff alleges this cause of action in the alternative to causes of action one through

7 three above.

8

109. Section 1786.12 lists the permissible purposes for obtaining a consumer report

9 under the ICRAA.

10

110. As alleged above, to the extent that Doordash contends that it did not procure

11 consumer reports on applicants for employment purposes, then Doordash lacked a permissible

12 purpose under the ICRAA.

13

111. As a direct and proximate cause of Doordash's conduct, Plaintiff and other

14 members of the putative class have suffered injury, including the violation of their statutory rights.

15

112. Doordash's conduct as described herein was willful, reckless, or grossly negligent,

16 as alleged above.

17

113. Plaintiff, on behalf of herself and all class members, seeks all available remedies

18 pursuant to Cal. Civ. Code § 1786.50 including statutory damages, actual damages, punitive

19 damages, and attorneys' fees and costs.

20

### EIGHTH CAUSE OF ACTION

21

**VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

22

**15 U.S.C. §§ 1681b(f), 1681e(a), 1681q**

23

**(Brought on Behalf of the Improper Authorization Class)**

24

114. Plaintiff hereby incorporates by reference the allegations contained in this

25 Complaint.  Plaintiff alleges this cause of action in the alternative to causes of action one through

26 three above.

27

115. Section1681(b)(f) of the FCRA prohibits a person from using or obtaining a

28 consumer report for any purpose unless the purpose is certified in accordance with section 1681e by

23

### CLASS ACTION COMPLAINT

1 | a prospective user of the consumer report.

2 |     116. Section 1681e(a) of the FCRA requires prospective users of the information in

3 | consumer reports to identify themselves, certify the purposes for which the information is sought,

4 | and certify that the information will be used for no other purpose.

5 |     117. To the extent that Doordash contends that it did not procure consumer reports on

6 | applicants for employment purposes, it failed to accurately certify to the consumer reporting agency

7 | the purpose for which the consumer report was authorized to be furnished under section 1681b(a),

8 | in violation of 15 U.S.C. §§ 1681b(f), 1681e(a).

9 |     118. Moreover, to the extent that Doordash contends that it did not procure consumer

10 | reports on applicants for employment purposes, it obtained consumer reports under false pretenses,

11 | in violation of the FCRA, 15 U.S.C. § 1681q.

12 |     119. As a direct and proximate cause of this conduct, Doordash violated the statutory

13 | rights of Plaintiff and other members of the putative class.

14 |     120. Doordash's conduct as described herein was willful, reckless, or grossly negligent,

15 | as alleged above.

16 |     121. Plaintiff, on behalf of herself and all class members, seeks all available remedies

17 | pursuant to 15 U.S.C. § 1681n, including statutory damages, actual damages, punitive damages, and

18 | attorneys' fees and costs.

19 |     122. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff

20 | alleges that the violations were negligent and seeks the appropriate remedy under 15 U.S.C. § 1681o.

21 | **NINTH CAUSE OF ACTION**

22 | **VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *et seq.***

23 | **(Brought on Behalf of the California Pre-Authorization and Adverse Action Subclasses)**

24 |     123. Plaintiff hereby incorporates by reference the allegations contained in this

25 | Complaint.

26 |     124. California's Unfair Competition Law ("UCL"), California Business & Professions

27 | Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in

28 | commercial markets for goods and services. The UCL prohibits any unlawful, unfair or fraudulent

24

---

CLASS ACTION COMPLAINT

business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

125. As described above, Defendants violated the unlawful prong of the UCL in that Defendants' conduct violated numerous provisions of the FCRA and ICRAA.

126. Defendants violated the unfair prong of the UCL in that they gained an unfair business advantage by failing to comply with state and federal mandates in conducting background checks and otherwise taking the necessary steps to adhere to the FCRA and ICRAA. Further, any utility for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiff and putative class members because the conduct offends public policy.

127. As a result of Defendants' conduct described herein and their willful, reckless, and/or grossly negligent violations of California Business & Professions Code § 17203, Plaintiff and the class and subclass have lost money and suffered harm as described herein.

128. Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to engage in the unfair and unlawful conduct described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the putative classes and subclasses, prays as follows:

A.     For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representative, and that Plaintiff's counsel be appointed counsel for the classes and subclasses;

B.     For a declaration that Defendants' practices violate the FCRA, ICRAA, and UCL;

C.     For an award of statutory, compensatory, special, general, and punitive damages according to proof against Defendants;

D.     For an award of appropriate equitable relief, including but not limited to an injunction forbidding Defendants from engaging in further unlawful conduct in violation of the FCRA, ICRAA, and UCL;

CLASS ACTION COMPLAINT

1       E.      For restitution for unfair competition pursuant to Business & Professions Code §

2 17200, including disgorgement of profits, as may be proven;

3       F.      For an order awarding reasonable attorneys' fees and the costs of suit herein,

4 including but not limited to an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1681n, 15

5 U.S.C. § 1681o, California Civil Code §1786.50, and California Code of Civil Procedure § 1021.5;

6       G.     For an award of pre- and post-judgment interest; and

7       H.     For such other and further relief as may be deemed necessary or appropriate.

8

9 DATED:     June 26, 2018       COUNSELONE, PC

10

11                        By

12                          Anthony J. Orshansky
                         Alexandria Kachadoorian

13                          Justin Kachadoorian

14                          *Attorneys for Plaintiff Donna Ontiveros*
                         *and the Putative Class*

15

16

17                    **JURY DEMAND**

18     Plaintiff hereby demands a jury trial on all issues so triable.

19

20 DATED:     June 26, 2018       COUNSELONE, PC

21

22                        By

23                          Anthony J. Orshansky
                         Alexandria Kachadoorian

24                          Justin Kachadoorian

25                          *Attorneys for Plaintiff Donna Ontiveros*
                         *and the Putative Class*

26

27

28

CLASS ACTION COMPLAINT

CASE NUMBER: CGC-18-567688  DONNA ONTIVEROS VS. DOORDASH, INC.

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

|  |  |
|---|---|
| **DATE:** | **NOV-28-2018** |
| **TIME:** | **10:30AM** |
| **PLACE:** | **Department 610** |
|  | **400 McAllister Street** |
|  | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance**  at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**



**Superior Court of California, County of San Francisco**

## Alternative Dispute Resolution
## Program Information Package



> The plaintiff must serve a copy of the ADR Information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet)
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

For more information about ADR programs or dispute resolution alternatives, contact:

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA  94102
415-551-3869

*Or, visit the court ADR website at* ***www.sfsuperiorcourt.org***

Page 1

ADR-1  03/15                          (ja)

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management. Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation:** Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**3) ARBITRATION**

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.



# Superior Court of California
## County of San Francisco



HON. JOHN K. STEWART
PRESIDING JUDGE

### Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Michael I. Begert
The Honorable Suzanne R. Bolanos
The Honorable Angela Bradstreet
The Honorable Andrew Y.S. Cheng
The Honorable Samuel K. Feng
The Honorable Charles F. Haines

The Honorable Harold E. Kahn
The Honorable Curtis E.A. Karnow
The Honorable Charlene P. Kiesselbach
The Honorable James Robertson, II
The Honorable Richard B. Ulmer, Jr.
The Honorable Mary E. Wiss

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed, every effort will be made to fulfill the parties' choice. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3869

## EJT-001-INFO   Expedited Jury Trial Information Sheet

This information sheet is for anyone involved in a civil lawsuit who will be taking part in an **expedited jury trial**—a trial that is shorter and has a smaller jury than a traditional jury trial.

> You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.29 and in rules 3.1545–3.1553 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *http://leginfo.legislature.ca.gov/faces/codes.xhtml*. The rules are at *www.courts.ca.gov/rules*.

### (1) What is an expedited jury trial?

An expedited jury trial is a short trial, generally lasting only one or two days. It is intended to be quicker and less expensive than a traditional jury trial.

As in a traditional jury trial, a jury will hear your case and will reach a decision about whether one side has to pay money to the other side. An expedited jury trial differs from a regular jury trial in several important ways:

- **The trial will be shorter.** Each side has 5 hours to pick a jury, put on all its witnesses, show the jury its evidence, and argue its case.
- **The jury will be smaller.** There will be 8 jurors instead of 12.
- **Choosing the jury will be faster.** The parties will exercise fewer challenges.

### (2) What cases have expedited jury trials?

- **Mandatory expedited jury trials.** All limited civil cases—cases where the demand for damages or the value of property at issue is $25,000 or less—come within the *mandatory expedited jury trial* procedures. These can be found in the Code of Civil Procedure, starting at section 630.20. Unless your case is an unlawful detainer (eviction) action, or meets one of the exceptions set out in the statute, it will be within the expedited jury trial procedures. These exceptions are explained more in (7) below.
  - **Voluntary expedited jury trials.** If your civil case is not a limited civil case, or even if it is, you can choose to take part in a *voluntary expedited jury trial*, if all the parties agree to do so. Voluntary expedited jury trials have the same shorter time frame and smaller jury that the

mandatory ones do, but have one other important aspect—all parties must waive their rights to appeal. In order to help keep down the costs of litigation, there are no appeals following a *voluntary* expedited jury trial except in very limited circumstances. These are explained more fully in (9).

### (3) Will the case be in front of a judge?

The trial will take place at a courthouse and a judge, or, if you agree, a temporary judge (a court commissioner or an experienced attorney that the court appoints to act as a judge) will handle the trial.

### (4) Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

### (5) Is the decision of the jury binding on the parties?

Generally, yes, but not always. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. The court will enter a judgment based on the verdict, the jury's decision that one or more defendants will pay money to the plaintiff or that the plaintiff gets no money at all.

But parties in an expedited jury trial, like in other kinds of trials, are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also put a cap on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are known as "high/low agreements." You should discuss with your attorney whether you should enter into such an agreement in your case and how it will affect you.

### (6) How else is an expedited jury trial different?

The goal of the expedited jury trial process is to have shorter and less expensive trials.

- The cases that come within the mandatory expedited jury trial procedures are all limited civil actions, and they must proceed under the limited discovery and

Judicial Council of California, *www.courts.ca.gov*
Revised July 1, 2016, Mandatory Form
Code of Civil Procedure, § 630.01–630.10
Cal. Rules of Court, rules 3.1545–3.1553

Expedited Jury Trial Information Sheet

EJT-001-INFO, Page 1 of 2
➡

## EJT-001-INFO    Expedited Jury Trial Information Sheet

pretrial rules that apply to those actions. See Code of Civil Procedure sections 90–100.

○ The voluntary expedited jury trial rules set up some special procedures to help those cases have shorter and less expensive trials. For example, the rules require that several weeks before the trial takes place, the parties show each other all exhibits and tell each other what witnesses will be at the trial. In addition, the judge will meet with the attorneys before the trial to work out some things in advance.

The other big difference is that the parties in either kind of expedited jury trial can make agreements about how the case will be tried so that it can be tried quickly and effectively. These agreements may include what rules will apply to the case, how many witnesses can testify for each side, what kind of evidence may be used, and what facts the parties already agree to and so do not need the jury to decide. The parties can agree to modify many of the rules that apply to trials generally or to any pretrial aspect of the expedited jury trials.

### ⑦ Do I have to have an expedited jury trial if my case is for $25,000 or less?

Not always. There are some exceptions.

○ The mandatory expedited jury trial procedures do not apply to any unlawful detainer or eviction case.

○ Any party may ask to opt out of the procedures if the case meets any of the criteria set out in Code of Civil Procedure section 630.20(b), all of which are also described in item 2 of the *Request to Opt Out of Mandatory Expedited Jury Trial* (form EJT-003). Any request to opt out must be made on that form, and it must be made within a certain time period, as set out in Cal. Rules of Court, rule 3.1546(c). Any opposition must be filed within 15 days after the request has been served.

*The remainder of this information sheet applies only to voluntary expedited jury trials.*

### ⑧ Who can take part in a voluntary expedited jury trial?

The process can be used in any civil case that the parties agree may be tried in one or two days. To have a voluntary expedited jury trial, both sides must want one. Each side must agree to all the rules described in ①, and to waive most appeal rights. The agreements between the parties must be put into writing in a

document called *[Proposed] Consent Order for Voluntary Expedited Jury Trial*, which will be submitted to the court for approval. (Form EJT-020 may be used for this.) The court must issue the consent order as proposed by the parties unless the court finds good cause why the action should not proceed through the expedited jury trial process.

### ⑨ Why do I give up most of my rights to an appeal in a voluntary expedited jury trial?

To keep costs down and provide a faster end to the case, all parties who agree to take part in a voluntary expedited jury trial must agree to waive the right to appeal the jury verdict or decisions by the judicial officer concerning the trial unless one of the following happens:

○ Misconduct of the judicial officer that materially affected substantial rights of a party;

○ Misconduct of the jury; or

○ Corruption or fraud or some other bad act that prevented a fair trial.

In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds. Neither you nor the other side will be able to ask for a new trial on the grounds that the jury verdict was too high or too low, that legal mistakes were made before or during the trial, or that new evidence was found later.

### ⑩ Can I change my mind after agreeing to a voluntary expedited jury trial?

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in a voluntary expedited jury trial, that agreement is binding on both sides. It can be changed only if both sides want to change it or stop the process or if a court decides there are good reasons the voluntary expedited jury trial should not be used in the case. This is why it is important to talk to your attorney before agreeing to a voluntary expedited jury trial. This information sheet does not cover everything you may need to know about voluntary expedited jury trials. It only gives you an overview of the process and how it may affect your rights. You should discuss all the points covered here and any questions you have about expedited jury trials with an attorney before agreeing to a voluntary expedited jury trial.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR (Name): <br><br> SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 <br><br> PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |
| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: <br><br> DEPARTMENT 610 |

1) The parties hereby stipulate that this action shall be submitted to the following ADR process:

☐ **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐ **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Private Mediation** – Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐ **Other ADR process (describe)** _____

2) The parties agree that the ADR Process shall be completed by (date): _____

3) Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

| | |
|---|---|
| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  03/15                    STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)  ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:            Dept:            Div.:            Room:

Address of court *(if different from the address above)*:

☐  Notice of Intent to Appear by Telephone,  by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐  This statement is submitted by party *(name)*:
   b. ☐  This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.   The complaint was filed on *(date)*:
   b. ☐  The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not)*:
      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐  have had a default entered against them *(specify names)*:
   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
   a.   Type of case in  ☐  complaint  ☐  cross-complaint        *(Describe, including causes of action)*:

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. July 1, 2011] | CASE MANAGEMENT STATEMENT | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐   The trial has been set for *(date):*
b.   ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐   days *(specify number):*
b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:
e.   E-mail address:
☐   Additional representation is described in Attachment 8.

f.   Fax number:
g.   Party represented:

9.   **Preference**
☐   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**
a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1)   For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2)   For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).
(1)   ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2)   ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3)   ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form are willing to participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case have agreed to participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

Page 3 of 5

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.



# Superior Court of California
# County of San Francisco

### Expedited Jury Trial Information Sheet

### What is an expedited jury trial?

An expedited jury trial is a trial that is much faster and has a smaller jury than a traditional jury trial. An expedited jury trial differs from a regular jury trial in several ways:

- **The trial will be shorter.** Each side has 3 hours to make opening statements, present witnesses and evidence, and make closing statements.

- **The jury will be smaller.** There will be 8 jurors instead of 12.

- **Choosing the jury will be faster.** The parties will exercise fewer preemptory challenges.

- **Parties will waive some post trial motions and rights to appeal.** Appeals are allowed only if there is: (1) Misconduct of the judicial officer that materially affected substantial rights of a party; (2) Jury misconduct; or (3) Corruption or fraud or some other bad act that prevented a fair trial.

  In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds.

### Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

### Is the decision of the jury binding on the parties?

Generally, yes. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. However, parties who take part in expedited jury trials are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also impose a cap, or maximum, on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are commonly known as "high/low agreements."

### How do I qualify for an expedited jury trial?

The process can be used in any civil case. To have an expedited jury trial, both sides must want one. Each side must agree that it will use only three hours to put on its case and agree to the other rules described above. This agreement must be put in writing in a Stipulation and submitted along with a Proposed Consent Order Granting an Expedited Jury Trial, which is given to the court for approval. The court will usually agree to the Consent Order.

### How do I request an expedited jury trial?

To have an expedited jury trial, both sides must submit a Stipulation and Proposed Consent Order for Expedited Jury Trial to the court for approval. This may happen at three stages of litigation:

1) **At Filing and Prior to Setting of a Trial Date:** Parties may submit a Stipulation to Expedited Jury Trial to Dept. 610 using the attached short form (see below). Parties must

also submit a Proposed Consent Order for Expedited Jury Trial to Dept. 610.

**2) After a Trial Date has been Set:** Parties submit a Stipulation and Proposed Consent Order for Expedited Jury Trial directly to Dept. 206 at least *30 days* prior to the assigned trial date.

**3) After Trial Assignment:** A Proposed Consent Order for Expedited Jury Trial may be submitted immediately to the assigned trial department not less than *30 days* prior to the assigned trial date.

Also, after a case is assigned to a particular judge for trial, the parties may ask the trial judge to have an Expedited Jury Trial, and the judge may permit the parties to then sign the appropriate Stipulation and Proposed Consent Order for Expedited Jury Trial.

**Can I change my mind after agreeing to an expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in an expedited jury trial the agreement is binding on both sides.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Expedited Jury Trial Request**
*Please submit a copy of this request to Dept. 610.*

Case No. _____

Case Name: _____    v. _____

_____

The parties would like this action to be submitted to an Expedited Jury Trial.

The parties shall submit a consent order to the Court on or by _____.

| Name of Party | Name of Party/Attorney | Signature of Party |
|---|---|---|
|  |  | Dated: _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
|  |  | Dated: _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
|  |  | Dated: _____ |

Please note: a [Proposed] Consent Order for Expedited Jury Trial is still required in addition to this stipulation form.

You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.12 and in rules 3.1545–3.1552 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *www.leginfo.ca.gov/calaw.html.* The rules are at *www.courts.ca.gov/rules.*

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*

Do you have a case filed in San Francisco Superior Court and want to settle sooner than your trial date?

Consider The Bar Association of San Francisco's

# Early
# Settlement
# Program

Learn more about the Early Settlement Program—scan the QR Code or visit www.sfbar.org/adr/esp



The Early Settlement Program:

Early Settlement provides:

## at is ESP?

Bar Association of San Francisco's
...ly Settlement Program (ESP)
...vailable as one of San Francisco
...perior Court's Alternative Dispute
...olution (ADR) programs (Local Rule
...).

...P is a **highly successful** ADR
...program that handles cases in areas
...law such as business, personal
...ury, employment, labor, civil rights,
...crimination, insurance, malpractice,
...ndlord/tenant, and many others.

...P is **unique** in that the panelists,
...helping you move toward settlement,
...n provide you confidential feedback
...out their evaluation of your case,
...cluding opinions as to potential
...se value.

...or more information as well as the
...omplete Policies & Procedures, go to:
**www.sfbar.org/esp**

## Who are the Panelists?

## Costs

## Contact

## Steps:

The forms you need can be found at **www.sfbar.org/esp**, or email adr@sfbar.org or call 415-782-8905 for a packet to be sent to you.

1. Please complete the ESP Agreement and return it to BASF via email at adr@sfbar.org or by fax to 415-989-0381. You don't have to get the other parties to sign, just send yours.

2. When all parties have signed the ESP Agreement, you will be sent the Notice of ESP, along with an invoice.

3. There is a $295 administrative fee per party, with a cap of $590 for multiple parties represented by the same attorney. You can pay by check, money order or credit card.

4. Send your administrative fee by fax, email or mail to: BASF / ESP, 301 Battery Street, Third Floor, San Francisco, California 94111.

5. When BASF receives the fees from all parties, your matter will be assigned to a panelist (or panel of 2), who you will work with to set the date, time and location for your conference.

6. If you must reschedule your ESP conference date, work with the other side and your panelist(s) to set the new date. BASF does not need to be notified.

7. Before your conference, provide a copy of your description of the dispute to all parties and panelists. BASF does not need a copy.

8. If the matter is settled in your ESP conference, congratulations!

9. If the matter is not settled in your ESP conference, your initial court date remains the same.



# MEDIATION SERVICES



THE BAR ASSOCIATION OF
SAN FRANCISCO

## TESTIMONIALS

"This was the third attempt to mediate this case, and the BASF mediator was far and away the best mediator. I dare say that we would not have settled today but for his efforts."

*George Yuhas, Esq.*
*Orrick, Herrington & Sutcliffe LLP*

"We had an excellent experience and, after 8 1/2 hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

*Robert Charles Friese, Esq.*
*Shartsis Friese LLP*

"When the other side made their offer, I thought there was no way we would reach an agreement – we were too far apart, but the mediator brought us together. He saved me a lot of time and aggravation by facilitating a settlement. Thanks!"

*Leslie Caplan*
*Global Warming Campaign Manager*
*Bluewater Network*

"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"

*Mark Abelson, Esq.*
*Campagnoli, Abelson & Campagnoli*

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

*Denise A. Leadbetter, Esq.*
*Zacks, Utrecht & Leadbetter*



PROCEDURES, PODCASTS,
FORMS, MEDIATOR BIOGRAPHIES
AND PHOTOGRAPHS:
**www.sfbar.org/mediation**

adr@sfbar.org or
**415-982-1600**

## Experienced mediators are available in the following areas

- Business
- Civil Rights
- Commercial
- Construction
- Contracts
- Disability
- Discrimination
- Education
- Employment/Workplace
- Environmental
- Family
- Family-Certified Specialists
- Fee Disputes
- Financial
- Government
- Insurance
- Intellectual Property
- Intra-Organizational
- Labor
- Landlord/Tenant
- Land Use
- LGBT Issues
- Malpractice: Legal-Medical-Professional
- Partnership Dissolutions
- Personal Injury
- Probate/Trust
- Products Liability
- Real Estate
- Securities
- Taxation
- Uninsured Motorist
- And more....

**QUALITY**  •  **EXPERIENCE**  •  **TRUST**

### WHAT IS BASF'S MEDIATION SERVICE?

The Bar Association of San Francisco's Mediation Services is a private mediation service which will assist you with almost any type of dispute, from simple contract disputes to complex commercial matters.

### WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our extensive experience requirements. By going through BASF you receive the services of these highly qualified mediators at a great value.

### HOW DO I LEARN MORE ABOUT THE MEDIATORS?

BASF's website at www.sfbar.org/mediation provides bios, photos and hourly rates of mediators. You can search by name or by area of law needed for your case. BASF staff is always available to assist you with selection or to answer questions.

### HOW MUCH DOES THE SERVICE COST?

A $295 per party administrative fee is paid to BASF at the time the Consent to Mediate form is filed. This fee covers the first hour of mediator preparation time and the first two hours of session time. Time beyond that is paid at the mediator's normal hourly rate.

### HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF staff to assist with the selection.

### WHY SHOULD I GO THROUGH BASF? CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

BASF mediators have agreed to provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the free hours unless you notify us. Once you have filed with us, you will talk directly to the mediator to ask questions and to set a convenient mediation date and time.

### HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. BASF mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

### WHO CAN USE THE SERVICE?

BASF mediation can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during a court action.

### OUR CASE IS FILED IN COURT. HOW DO WE USE BASF'S MEDIATION SERVICES?

When you file the San Francisco Superior Court's Stipulation to ADR form, check the box indicating "Mediation Services of BASF." Then complete BASF's Consent to Mediate form found on our website and file it with us. (If the matter was filed in a different county, please check with that court for the appropriate process.)

### WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed all the paperwork, BASF can normally have you in touch with the mediator within a day or two. If there is a deadline, BASF staff will give the matter top priority.

### WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in 30+ areas of law. If you don't see the area you need on our website or in this brochure, contact us; it is very likely we can match your need with one of our panelists.

### MORE INFORMATION

Visit our website (www.sfbar.org/mediation) where you can search by name or by area of law. For personal assistance, please call 415-982-1600.

**WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600**